JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. SA CV 17-0076-DOC (DFMx)                    Date:  June 8, 2017

Title: JOHNNY KIM, ET AL. V. CASHCALL, INC.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

|  Deborah Goltz  | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):   ORDER DENYING DEFENDANT'S PETITION TO COMPEL ARBITRATION; STAYING CASE [19]**

        Before the Court is Defendant CashCall, Inc.'s ("CashCall" or "Defendant") Motion to Compel Arbitration ("Motion") (Dkt. 19). The Court finds this matter suitable for decision without oral argument. Fed. R. Civ. P. 78, Local Rule 7-15. Having considered the parties' respective arguments, the Court hereby DENIES Defendant's Motion. However, the Court STAYS proceedings pending the Supreme Court's ruling in *Ernst & Young, LLP v. Morris*.

### I.    Background

        In the operative complaint, the First Amended Complaint ("FAC") (Dkt. 18), Johnny Kim, Jason Au, Tam Van, Tan Ngo, Cayla Souvanna, and Mehul Patel (collectively, "Plaintiffs") bring the following claims against the Defendant on behalf of themselves and a putative class: (1) unpaid overtime wages in violation of California Labor Code §§ 510, 1194; (2) unlawful failure to provide adequate meal periods in violation of California Labor Code §§ 226.7, 512; (3) unlawful deductions from wage earned by employees California Labor Code §§ 221–23, 400–10; (4) unfair competition

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0076-DOC (DFMx)                                          Date: June 8, 2017
                                                                                                    Page 2

in violation of California Business and Professions Code § 17200 *et seq.*; (5) violation of recordkeeping requirements under 29 U.S.C. § 211(c) and California Labor Code §§ 226, 1174–75; and (6) violation of the Fair Labor Standards Act, 29 U.S.C. §§ 207(a), 216(b). FAC ¶¶ 60–100.

Plaintiffs are loan agents employed at Defendant CashCall's Orange Call Center. *Id.* ¶ 2. As a condition of their initial or continued employment, Defendant required Plaintiffs to sign a "CashCall Employee Acknowledgement Form" ("the Form" or "the Agreement"). *Id.* ¶ 35. The Form requires individual arbitration of all employment disputes and a jury trial waiver. *Id.* ¶ 31. Under this contract, arbitration of any disputes is to be held in Orange County using JAMS employment dispute resolution rules. Declaration of Laura Perches ("Perches Decl.") (Dkt. 19-9) Ex. A at 1. According to Plaintiffs, arbitration through JAMS is confidential and limits discovery and deposition. FAC ¶ 44. Specifically, a plaintiff is allegedly only entitled to one deposition under JAMS Rule 17. *Id.*

Defendant provided copies of the Forms signed by Plaintiffs Kim, Au, Van, and Patel, but has been unable to locate Plaintiff Souvanna's Employee Acknowledgement Form. *See* Perches Decl. ¶¶ 3–7. Defendant's staff searched in Souvanna's personnel file and former employee files but were not able to find a signed Form. *Id.* ¶ 7. However, Defendant maintains that Souvanna would have been required to sign an Employee Acknowledgment Form identical to those signed by the other Plaintiffs, and that Human Resources would have been aware if Souvanna had declined to sign the Form. Defendant CashCall, Inc.'s Supplemental Brief ("Def.'s Supp. Br.") (Dkt. 26) at 3.

Plaintiffs allege that the Form was presented to new hires in a packet of other employment documents that new hires were required to sign. FAC ¶ 42. Plaintiffs also state that the Form was presented to them during work hours without adequate time to review the document or the opportunity to consult an attorney. *Id.* Plaintiffs allege that the Form was created by Defendant and that there was no opportunity for Plaintiffs to negotiate its terms. *Id.* ¶¶ 46–47. Additionally, Plaintiffs state that Defendant did not provide any explanation about the Form or the consequences of signing it. *Id.* ¶ 42.

## II.     Procedural History

This action was initiated on January 16, 2017 (Dkt. 1). Plaintiffs filed the FAC on April 5, 2017.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0076-DOC (DFMx)                                    Date: June 8, 2017
                                                                     Page 3

On April 5, 2017, Defendant filed the instant Motion seeking to compel Plaintiffs to individual arbitration. Plaintiffs opposed on April 23, 2017 (Dkt. 20), and Defendant replied on May 1, 2017 (Dkt. 21).

On May 2, 2017, the Court called for supplemental briefing, requesting copies of any arbitration agreements Plaintiffs entered into with Defendant (Dkt. 22). On May 8, 2017, Defendants filed a supplement to the Motion. Def.'s Supp. Br. On May 14, 2017, Plaintiffs filed a supplement to the Motion. Plaintiffs' Supplement to Motion ("Pl.'s Supp. Br.") (Dkt. 27).

### III.   Legal Standard

"An agreement to arbitrate is a matter of contract." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "It is a way to resolve those disputes—but only those disputes—the parties have agreed to submit to arbitration." *Id.*

The Federal Arbitration Act ("FAA") provides that "any arbitration agreement within its scope shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. It permits any party "aggrieved by the alleged . . . refusal of another to arbitrate" to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement. *Id.* at § 4; *Chiron Corp.*, 207 F.3d at 1130. The Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). When a party moves to compel arbitration, interpreting the parties' intent on certain issues in the agreement remains "within the province of judicial review." *MoPet v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011).

### IV.   Discussion

Defendant argues that the Form is a binding, enforceable arbitration agreement that covers Plaintiffs' claims and compels Plaintiffs to individual arbitration. Mot. at 2. In their Opposition, Plaintiffs argue that (1) the Form is unconscionable and in violation of public policy; (2) the Form is unenforceable because Plaintiffs were induced to sign the Form by fraud, coercion, or duress; and (3) the Form is in violation of the National Labor Relations Act ("NLRA"). *See* Opp'n at 7, 8, 11–12.

To determine whether the FAA requires a dispute be sent to arbitration, courts employ a two-step test. Courts first determine (1) whether a valid agreement to arbitrate

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0076-DOC (DFMx)                          Date: June 8, 2017
                                                                          Page 4

exists, and if it does, (2) whether the agreement encompasses the dispute at issue. *See* 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999).

However, because Defendant has failed to provide a copy of the Form signed by Souvanna, the Court will first address whether an arbitration agreement exists between Souvanna and Defendant.

**A. Souvanna's Missing Arbitration Agreement**

The Court must determine whether Souvanna can be compelled to arbitrate her claims even though Defendant is unable to produce a copy of her signed Employee Acknowledgment Form.

The party seeking to compel arbitration must prove the existence of a valid arbitration agreement by the preponderance of the evidence. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010). An original is not required to provide evidence of a writing if the originals are lost or destroyed. Fed. R. Evid. 1004. As long as the party using the evidence did not act in bad faith, other evidence of the writing is admissible. *Id.*; *see also Dart Industries, Inc. v. Commercial Union Ins. Co.*, 28 Cal. 4th 1059, 1068 (2002).

To prove the contents of a missing document, courts have admitted a standard form of the lost document. *Dart Industries*, 28 Cal. 4th at 1070 (citing *Kenniff v. Caulfield*, 140 Cal. 34, 43 (1903)). For example, in *Mango v. City of Maywood*, 2012 WL 5906665, *11 (C.D. Cal. Oct. 5, 2012), the court determined an employment contract existed even though the parties could present only secondary evidence of its contents. *See also Kenniff*, 140 Cal. at 806–07 (finding a lost contract of bargain and sale existed when its drafter testified that a standard form contract presented to him was identical to the original deed). Courts have also admitted evidence of the routine practice of a party. *Dart Industries*, 28 Cal. 4th at 1070 (citing *Amoco Production Co. v. United States*, 619 F.2d 1383, 1389–90 (10th Cir. 1980). Further, a party demonstrating the existence of a lost document must exercise reasonable diligence to find the original. *Id.* at 1069.

In its attempts to locate Souvanna's Form, Defendant searched Souvanna's personnel file and looked through personnel files of every former employee with a last name beginning with the letter "S." Perches Decl. ¶ 7. Defendant also located a copy of the standard Employee Acknowledgment Form that every new CashCall employee was required to sign as a condition of employment. *Id.* ¶ 12. Defendant noted that this is the version of the form that Souvanna would have been required to sign in order to continue her employment with Defendant. *Id.* Additionally, there is no evidence that Defendant

acted in bad faith. *See id.* ¶¶ 7, 13. The Court finds that Defendant has demonstrated reasonable diligence in its efforts to locate Souvanna's Employee Acknowledgment Form.

Moreover, Souvanna does not deny that she signed the Form. In fact, she admits that she "may have been required to sign an Employee Acknowledgment Form during working hours." Declaration of Cayla Souvanna ("Souvanna Decl.") (Dkt. 20-2) Ex. 15 at 2.

In light of the evidence, the Court finds Defendant demonstrated that Souvanna signed the Form.

## B.  Validity

The first prong of the FAA's two-part test—the existence of a valid, written agreement to arbitrate in a contract—is governed by state contract law. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002); *see also* 9 U.S.C. § 2 ("[Arbitration agreements] shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*."(emphasis added)). It is "well settled" that the existence of a valid, written agreement to arbitrate in a contract is an issue for a court, not an arbitrator, to decide. *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 296 (2010). If there is a factual dispute regarding whether an agreement to arbitrate was made, a court must try the issue. *See* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof. . . . [T]he party alleged to be in default may . . . demand a jury trial of such issue . . . ."); *Clar Prods., Ltd. v. Isram Petition Pictures Prod. Servs., Inc.*, 529 F. Supp. 381, 383 (S.D.N.Y. 1982) (ordering an "evidentiary hearing" because there was an "issue of fact" as to whether a valid arbitration agreement was formed).

Because arbitration is a matter of contract, arbitration agreements "are subject to all defenses to enforcement that apply to contracts generally." *Ingle v. Circuit City Stores, Inc*., 328 F.3d 1165, 1170 (9th Cir. 2003) (citing 9 U.S.C. § 2). "It is well-established that unconscionability is a generally applicable contract defense, which may render an arbitration provision unenforceable." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006). "[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) (citing *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 972 (1997)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0076-DOC (DFMx)                                    Date: June 8, 2017
                                                                      Page 6

Plaintiffs assert that the Form is unconscionable; that it is unenforceable because it was signed under fraud, coercion, or duress; and that it violated the NLRA. Opp'n at 4, 7, 11–12.

### 1.   Unconscionability and Public Policy

California courts analyze contract provisions for both procedural and substantive unconscionability. *Nagrampa*, 469 F.3d at 1280. The procedural unconscionability analysis focuses on "'oppression' or 'surprise.'" *Id.* (citing *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice," while "[s]urprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." *Flores*, 93 Cal. App. 4th at 853. "An arbitration provision is substantively unconscionable if it is "overly harsh" or generates "one-sided results." *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 114 (2000) (internal citations omitted). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal. 4th at 114. However, both procedural and substantive unconscionability must be present in some degree for a contract to be unenforceable. *Id.*

Plaintiffs argue that the arbitration clause in the Form is procedurally unconscionable because it is a contract of adhesion. A contract of adhesion is "a standard-form contract, drafted by the party with superior bargaining power, which relegates to the other party the option of either adhering to its terms without modification or rejecting the contract entirely." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002). A contract of adhesion is procedurally unconscionable. *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003).

Plaintiffs explain that the Form was drafted by Defendant and presented to Plaintiffs. FAC ¶¶ 42, 46–47. Plaintiffs also state that they did not have adequate time to review the Form, consult an attorney, or negotiate its terms. *Id.* Furthermore, Defendant concedes that the arbitration clause in the Form is procedurally unconscionable because Plaintiffs were required to sign it as a condition of employment. Mot. at 11. Specifically, Defendant required Plaintiffs to sign the Employee Acknowledgment Form as a condition for initial and continued employment, FAC ¶ 42, without offering an opportunity to negotiate or opt-out of the terms of the Form. Opp'n at 11–12. Therefore, the Form is a contract of adhesion. *See Circuit City*, 279 F.3d at 893. The Court therefore finds that Plaintiffs were presented with a procedurally unconscionable contract of adhesion.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0076-DOC (DFMx)                    Date: June 8, 2017
                                                          Page 7

Plaintiffs make two main arguments regarding substantive unconscionability. As an initial argument, Plaintiffs maintain that JAMS is an unfairly advantageous forum for Defendant and prejudices loan agents for five asserted reasons. *Id.* at 12–17. The Court will address each of these arguments in turn.

Plaintiffs first argue that the confidential nature of JAMS proceedings will reduce the likelihood of litigation against Defendant. *Id.* at 12–13. This may be the case, but does not make the arbitration agreement unconscionable. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011).

Second, Plaintiffs argue that the class action waiver will make litigation prohibitively expensive because individuals must "re-invent the wheel" to make their claims. Opp'n at 13. However, arbitration agreements with class action waivers are not unconscionable as a matter of law. *See Concepcion*, 563 U.S. 333 at 352; s*ee also Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (finding prohibitively expensive costs of arbitration not to render arbitration agreement substantively unconscionable).

Third, Plaintiffs argue that limiting parties to one deposition under JAMS Employment Rule 17 will unfairly protect Defendant from full disclosure of information of which Defendant has exclusive possession. Opp'n at 13–14. This mischaracterizes JAMS Employment Rule 17, which instead states that "[e]ach Party may take *at least* one deposition of an opposing Party or an individual under the control of the opposing Party." Declaration of Matthew B. Golper ("Golper Decl.") (Dkt. 19-1) Ex. E at 17 (emphasis added). Rule 17 also requires the parties to voluntarily exchange all non-privileged documents and other information relevant to the dispute. *Id.*

Fourth, Plaintiffs assert that JAMS rules giving the arbitrator discretion in awarding attorney fees are inconsistent with fee-shifting provisions under 29 U.S.C. § 216(b) and Section 1194(a) of the California Labor Code. Opp'n at 16. Both statutes allow a court to award reasonable attorney's fees. *See* 29 U.S.C. § 216(b) (stating when an employer violates the FLSA, the court "shall . . . allow a reasonable attorney's fee to be paid by the defendant"); Cal. Lab. Code § 1194(a) ("any employee receiving less than . . . the legal overtime compensation . . . is entitled to recover . . . reasonable attorney's fees"). JAMS allows the arbitrator to consider a party's cooperation and compliance with the discovery process when determining attorney's fees. Golper Decl. Ex. E at 23.

The language contained in JAMS Employment Rule 24(g) is not inconsistent with the relevant provisions of federal and state law. 29 U.S.C. § 216(b) and Section 1194(a) of the California Labor Code do not provide guidance on the "reasonableness" of

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0076-DOC (DFMx)                                     Date: June 8, 2017
                                                                                      Page 8

attorney's fees, and JAMS Employment Rule 24(g) merely provides additional guidance in making this determination. *See* 29 U.S.C. § 216(b); Cal. Lab. Code § 1194(a); Golper Decl. Ex. E at 23.

Fifth, Plaintiffs argue that they will be prejudiced by the arbitrator's inability to award relief because the Form does not provide for any equitable or injunctive relief. Opp'n at 17. The Form states, however, that "[t]he arbitrator may grant injunctions or other relief." Perches Decl. Ex. A at 1. Moreover, JAMS Rule 24(c) states that "[t]he Arbitrator may grant any remedy or relief that is just and equitable and within the scope of the Parties' agreement, including, but not limited to, specific performance of a contract or any other equitable or legal remedy." Golper Decl. Ex. E at 23. Thus, an arbitrator is able to grant equitable or injunctive relief.

In addition, Plaintiffs argue that the Form is substantively unconscionable because of "CashCall's pre-meditated and intentional violation of public policy based on its alleged pattern and practice with its loan agents, including Plaintiffs." *See* Opp'n at 5–7, 12. Plaintiffs argue that the arbitration agreement is intended to allow CashCall to violate labor laws with impunity. *See id.*

In support of this argument, Plaintiffs cite *Gutierrez v. Carter Bros. Sec. Servs., LLC*, 63 F. Supp. 3d 1206 (E.D. Cal. 2014). There a court found substantive unconscionability where an arbitration agreement failed to inform the plaintiffs that they were waiving their rights to class arbitration; forced plaintiffs to travel to arbitrate; required the plaintiffs to pay half the costs their employer's arbitration costs if they did not prevail; and entitled the employer to costs, fees, and expenses if it obtained an order forcing arbitration against an employee. *Id.* at 1214. The Court also found that the arbitration agreement was illegal and in violation of public policy because its entire point was to prevent employees from having any recourse against their employer, and thereby wholly insulating the employer from liability. *Id.* at 1215.

Here, Plaintiffs have alleged that the point of the Form is to wholly insulate CashCall from liability for employment law violations, *see* Opp'n at 4–7, but they have failed to provide sufficient evidence to support this conclusion. Plaintiffs point to an email from CashCall's counsel as evidence of CashCall's invidious purpose. *Id.* at 5. However, that email merely reflects that CashCall believes its arbitration agreement is enforceable, and that any recovery by the former employee discussed in the email was likely to be slight. *See* Declaration of Dale Fiola ("Fiola Decl.") Ex. 1. This alone is insufficient to demonstrate that the Agreement is either substantively unconscionable, or unenforceable due to public policy considerations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-0076-DOC (DFMx)                                Date: June 8, 2017
                                                                                        Page 9

In sum, Plaintiffs have failed to establish substantive unconscionability. Under *Armendariz*, a plaintiff must demonstrate both procedural and substantive unconscionability. 24 Cal. 4th at 114. Therefore, the Court finds that the Employee Acknowledgment Form is not unconscionable or contrary to public policy.

## 2. Contract Defenses

Plaintiffs argue that the Form is unenforceable as a whole because they signed it under fraud, coercion, or duress. Opp'n at 7. However, in their Opposition, Plaintiffs only argue fraud. *See id.* Accordingly, the Court will address only the fraud defense.

Consent is not real or free when obtained through duress, menace, fraud, undue influence, or mistake. Cal. Civ. Code § 1567. Fraud can occur in either the execution or inducement of a contract and can render a contract void. *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996).

Fraud in the execution of a contract occurs when "'the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all, mutual assent is lacking, and [the contract] is *void*.'" *Id.* (quoting *Ford v. Shearson Lehman American Express, Inc.*, 180 Cal. App. 3d 1011, 1028 (1986) (emphasis in original)). "[C]laims of fraud in the execution of the entire agreement are not arbitrable under either state or federal law. If the entire contract is void *ab initio* because of fraud, the parties have not agreed to arbitrate any controversy . . . ." *Rosenthal*, 14 Cal. 4th at 415.

Fraud in the inducement of a contract occurs when the essential terms or character of the contract are misrepresented, and this misrepresentation induces assent. *Id.* at 420. In such a situation, the person manifesting assent must neither know nor have a reasonable opportunity to know of the true terms of the contract. *Id.*

In addition, fraud does not render a contract void if a party had a reasonable opportunity to read the terms of the contract, unless the party, without negligence on her part, signed the contract assuming its terms had a different meaning. *Id.* at 419–20. "A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." *Marin Storage & Trucking, Inc. v. Benco Contracting and Engineering, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001); s*ee also Randas v. YMCA of Metro. L.A.*, 17 Cal. App. 4th 158, 163 (finding woman illiterate in English was bound to terms of a release she had signed).

Plaintiffs argue that there was fraud in the execution of the Form. Opp'n at 7. However, they knew that they were signing employment documents. Opp'n Exs. 10–16. Additionally, Plaintiffs intended to enter into a contract, since they knew that signing the Form was a condition of initial or continued employment with Defendant. *See id*. Plaintiffs allege that they were not given sufficient time to review the Form before signing it, Opp'n at 8, but do not state that they asked for assistance in understanding the Form or for additional time to review the form. *See* Opp'n Exs. 10–16; *see also Randas*, 17 Cal. App. 4th at 163 (stating a person who signs a contract but cannot understand it "should have it read or explained to him") (citing 1 Witkin, Summary of Cal. Law § 120 (9th ed. 1987)). Therefore, the Court finds that there was no fraud in the execution of the Employee Acknowledgment Form.

### C. Coverage

The Court will next assess whether the arbitration clause in the Employee Acknowledgment Form covers Plaintiffs' claims in the case at hand.

The party seeking to compel arbitration bears the burden of proving the dispute at issue is covered by the arbitration agreement. *See Bryant*, 801 F. Supp. 2d at 904; *Samson*, 637 F.3d at 923–24. In determining this issue, the courts look to "whether the party seeking arbitration is making a claim which on its face is governed by the contract." *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960). "To determine whether a claim falls within the scope of an arbitration agreement, the focus is on the factual underpinnings of the claim rather than the legal theory alleged in the complaint." *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001) (citations omitted). Due to the liberal policy favoring arbitration, doubts as to whether a claim is covered by an arbitration agreement "should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986) (citations omitted).

The Form's arbitration clause provides that "any dispute or controversy arising out of, relating to, or concerning [the employee's] employment shall be settled by arbitration." Perches Decl. Exs. A–G. The Form specifically lists disputes regarding "[a]ny and all wage and hour claims, including claims for unpaid overtime or other benefits under both state and federal law" *and* "[a]ny and all claims for violation of any federal, state or local statute, including . . . the Fair Labor Standards Act." *Id.*

Plaintiffs' claims all arise out of their employment by Defendant. FAC ¶¶ 60–100. Further, Plaintiffs' claims are wage and hour claims or claims governed by state and

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0076-DOC (DFMx)                                    Date: June 8, 2017
                                                                      Page 11

federal law. *Id.* Therefore, the Court finds Plaintiffs' claims are encompassed by the Form's arbitration clause.

### D. Violation of NLRA

Plaintiffs assert that the arbitration clause in the Employee Acknowledgment Form is illegal because it violates the NLRA, citing *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (2016), *cert. granted*, 137 S.Ct. 809 (2017).

Under the NLRA, employees have the right to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection. *See* 29 U.S.C. § 157. In *Morris*, the Ninth Circuit determined that this right to pursue legal claims together is a substantive right that cannot be waived in arbitration agreements. *Morris*, 834 F.3d at 985–86. Accordingly, the Ninth Circuit found that an employment agreement requiring employees to pursue employment claims exclusively through individual arbitration violated the NLRA and therefore such a class action waiver was unenforceable. *Id.* at 980.

The case at hand is analogous to *Morris* in that Defendant required Plaintiffs to sign the Employee Acknowledgment Form as a condition of initial or continued employment. FAC ¶ 35. The Form's arbitration clause also requires individual arbitration of all claims against Defendant, and prohibits collective actions. *Id.* ¶ 31. Therefore, the ruling in *Morris* would require this Court to find that the class action waiver in the Form violated the NLRA and would prohibit this Court from compelling Plaintiffs to individual arbitration. However, there is a circuit split on issues addressed in *Morris. See D.R. Horton, Inc.* v. *N.L.R.B.*, 737 F.3d 344, 348 (5th Cir. 2013); *Owen* v. *Bristol Care, Inc.*, 702 F.3d 1050, 1053 (8th Cir. 2013); *Sutherland* v. *Ernst & Young LLP*, 726 F.3d 290, 298–99 (2d Cir. 2013) (per curiam), and the Supreme Court has granted certiorari in *Morris*. Therefore, the Court will consider whether to stay this case pending the Supreme Court's decision.

"A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936).

When considering whether to stay a case, courts weigh a series of competing interests, including (1) "the possible damage that may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0076-DOC (DFMx)                                  Date: June 8, 2017
                                                                              Page 12

from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citation omitted). "[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255.

"The existence of another proceeding that may have a substantial impact on a pending case is a particularly compelling reason to grant a stay." *Stanley v. Novartis Pharms Corp.*, No. CV 11-03191, 2012 WL 12883839, at *3 (C.D. Cal. April 13, 2012) (citing *Levya v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979)). The Supreme Court has granted certiorari on *Morris*, which will resolve a circuit split between the Ninth Circuit and three other circuit courts regarding whether the NLRA prohibits enforcement of class action waivers.

Plaintiffs argue that the first factor weighs in their favor because staying the proceedings would prejudice them. Opp'n at 18. Plaintiffs contend that Defendant's transfers of its consumer lending and mortgage lending business operations and personnel depletes Defendant's revenue resources to pay any judgment. *Id.*

As to the second factor, Defendant argues that if the Court denies this Motion, Defendant will be required to spend substantial resources to appeal and on the class action litigation that would ensue. Reply at 14. In addition, Defendant notes that the Supreme Court may reverse the Ninth Circuit's decision in *Morris*, which would mean the litigation costs expended in the absence of a stay would be wasted. *Id.*

Arguing that it meets the third factor, Defendant cites a recent Central District case stayed pending resolution of *Morris*. Mot. at 16 (quoting *Roman v. Northrop Grumman Corp.*, 2016 U.S. Dist. LEXIS 173022 (C.D. Cal. Dec. 14, 2016)). Several district courts in California have granted stays pending the ruling in *Morris*, noting that *Morris* will resolve issues central to those cases. *See, e.g.*, *Roman*, 2016 U.S. Dist. LEXIS 173022 at *7–8 (staying the case on the grounds that the Supreme Court's resolution of the *Morris* question would resolve a central issue in the case); *see also McElrath v. Uber Technologies, Inc.*, 2017 WL 1175591 at *5–7 (N.D. Cal. March 30, 2017) (issuing a stay because *Morris* would resolve central issues in the case). In this case, the issue of whether contracts requiring individual arbitration violate the NLRA is central to whether this Court will grant Defendant's Motion.

Because the Supreme Court has granted certiorari in *Morris*, which will resolve a central issue in the instant case, and considering the possibility of wasted litigation costs, this Court STAYS this case pending the Supreme Court's decision in *Morris*.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0076-DOC (DFMx)                              Date: June 8, 2017
                                                                        Page 13

###### V.      Disposition

For the foregoing reasons, the Court DENIES Defendant's Motion to compel individual arbitration, and STAYS proceedings pending the Supreme Court's decision in *Morris*. The parties are ORDERED to submit a status report to the Court with **fourteen days** of the Supreme Court's ruling in *Morris*.[1] [2]

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                    Initials of Deputy Clerk: djg
CIVIL-GEN

---

[1] To the extent applicable, the Court will consider Plaintiffs' arguments regarding the cost provisions in the Agreement at that time.
[2] Should the Supreme Court uphold *Morris*, Defendants would likely still be entitled to move to compel *class wide* arbitration, should they choose to do so.